**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | Misc. Action No.: 23-mc-369-MN |
| Plaintiff, | ) | |
| | ) | Underlying lawsuit pending in the United |
| vs. | ) | States District Court for the Eastern District |
| | ) | of Texas, Civ. No. 2:22-cv-203-JRG |
| GOOGLE LLC AND ALPHABET INC. | ) | **PUBLIC VERSION** |
| | ) | **Filed August 17, 2023** |
| Defendants. | ) | |

**PLAINTIFF NETLIST, INC.'S OPENING BRIEF IN
SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH
<u>THIRD PARTY SUBPOENAS</u>**

OF COUNSEL:

Jason G. Sheasby
Yanan Zhao
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900 Los
Angeles, CA 90067
(310) 277-1010
jsheasby@irell.com
yzhao@irell.com

Dated:  August 9, 2023
Public Version Dated:  August 17, 2023

Alan R. Silverstein (#5066)
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7322
asilverstein@connollygallagher.com

*Attorneys for Plaintiffs Netlist, Inc.*

## TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT ................................................................................................. 2

II. STATEMENT OF FACTS ......................................................................................... 5

    A.  The Underlying Patent Infringement Action ............................................... 5

    B.  Netlist Has Been Actively Seeking Discovery from Micron ....................... 5

    C.  Netlist Repeatedly Narrowed the Scope of Its Discovery Requests from Google ................................................................................................. 6

III. ARGUMENT ............................................................................................................ 8

    A.  Netlist's Requests Seek Narrowly Tailored, Relevant Information Central to the Underlying Action ................................................................ 8

        1.  Number of the Accused Products Google Uses in the U.S ..................... 8

        2.  Locations Where Google Qualifies or Tests the Accused Products ............................................................................................. 11

        3.  Documents Showing How Accused Products Function Within Google Products .............................................................................. 12

    B.  Alternatively, Netlist's Motion Should Be Transferred to the Eastern District of Texas Where the Underlying Patent Infringement Action Is Pending ...................................................................................... 15

IV. CONCLUSION ....................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   2019 WL 11828237 (C.D. Cal. June 17, 2019) ........................................................9

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)............................................................................12

*Cradle IP LLC v. Tex. Instruments, Inc.*,
   2013 WL 1794992 (D. Del. Apr. 29, 2013) ............................................................14

*Crocs, Inc. v. Effervescent, Inc.*,
   2017 WL 3888455 (D. Colo. Jan. 30, 2017).......................................................9, 10

*In re Daimler Truck N. Am., LLC*,
   2023 WL 2456069 (D. Del. Mar. 10, 2023) ...........................................................16

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018)...............................................................................9

*In re Gen. Mfg. Indus., LLC*,
   2023 WL 2213199 (D. Del. Feb. 24, 2023) .........................................8, 10, 12, 15

*Invensas Corp. v. Renesas Elecs. Corp.*,
   2013 WL 12146531 (D. Del. May 8, 2013)..............................................................8

*Kilopass Tech. Inc. v. Sidense Corp.*,
   2011 WL 2470493 (N.D. Cal. June 21, 2011) ........................................................10

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   2016 WL 70814 (D. Del. Jan. 6, 2016).....................................................................9

*Meijer Inc. v. Ranbaxy Inc.*,
   2017 WL 2591937 (E.D. Pa. June 15, 2017) .....................................................17, 18

*In re Motion to Compel Compliance With a Subpoena AD Testificandum Lynk Labs, Inc.*,
   2023 WL 2311948 (N.D. Cal. Feb. 28, 2023) ........................................................10

*N. Atl. Operating Co., Inc. v. Dunhuang Grp.*,
   2018 WL 3381300 (D. Del. July 11, 2018) ......................................................16, 17, 18

*In re Subpoena Issued to Cisco Sys., Inc.*,
   2010 WL 3155895 (N.D. Cal. Aug. 9, 2010) ..........................................................10

*In re Subpoena to Amazon.com, Inc.*,
2019 WL 13192100 (W.D. Wash. Nov. 19, 2019) ................................................................17

**Statutes**

35 U.S.C. § 271(b) ........................................................................................................................9

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................................8, 10

Fed. R. Civ. P. 45 ............................................................................................................1, 2, 8, 15, 17

Pursuant to the Federal Rules of Civil Procedure Rules 26 and 45, Netlist, Inc. ("Netlist"), the Plaintiff in the underlying action, by and through its attorneys, respectfully moves for an order compelling Google LLC and Alphabet, Inc. ("Alphabet") (collectively, "Google") to produce documents that were requested in the subpoenas *duces tecum* served on Google on May 8 and June 8, 2023. Exs. 1-4. Alternatively, Netlist moves the Court to transfer this subpoena-enforcement action to the Eastern District of Texas where the underlying patent infringement action is pending.

## CERTIFICATE OF COMPLIANCE WITH D. DEL. L.R. 7.1.1.

Counsel for Netlist and counsel for Google met and conferred on June 7, 2023 and July 7, 2023 regarding Netlist's subpoenas served on Alphabet and Google at issue.  Google refused to produce any documents in response to Netlist's subpoenas.

## PARTIES

Plaintiff Netlist is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Drive, Suite 100, Irvine, CA 92617. Google LLC is a limited liability company organized and existing under the laws of the State of Delaware. Google LLC has a registered agent to accept service of process within the State of Delaware located at 251 Little Falls Drive, Wilmington, DE 19808. Alphabet is a corporation organized and existing under the laws of the State of Delaware. Alphabet is the parent company of Google LLC. Alphabet has a registered agent to accept service of process within the State of Delaware located at 251 Little Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Action pursuant to Federal Rule of Civil Procedure 45 in that Netlist seeks to enforce the subpoenas that requires compliance at 600 Jefferic Blvd, Dover, DE 19901, which is within this District.

## I.   NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT

This is a subpoena-enforcement action under Federal Rule of Civil Procedure Rule 45 in connection with a patent infringement lawsuit Netlist brought against Micron Technology, Inc., Micron Semiconductor Products Inc., and Micron Technology Texas LLC (collectively "Defendants" or "Micron"), which are suppliers of memory products used by Google. *Netlist, Inc. v. Micron Tech., Inc.*, No. 22-cv-203-JRG (E.D. Tex.).

Google is a customer of Micron's DDR4 LRDIMMs, DDR5 DIMMs,[1] and HBM products[2] (collectively the "Accused Products") accused of infringing one or more of Netlist's U.S. Patent Nos. 10,949,339 (the '339 patent); 10,860,506 (the '506 patent); 11,016,918 (the '918 patent); 11,232,054 (the '054 patent); 8,787,060 (the '060 patent) and 9,318,160 (the '160 patent) (collectively the "Patents-in-Suit"). On information and belief, Google purchased Micron's Accused Products for use in its servers and computers.

According to Micron's written discovery responses, ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Because Micron does not have possession of detailed information tracking how or where its customers use the Accused Products, Netlist served subpoenas for document production on Micron's customers including Google, seeking discovery of the identity and quantity of the Accused Products that Google imported into or used in the United States. This information is critical to set the scope for Netlist's inducement of infringement claims pending against Micron. Netlist also asked Google to produce certain technical documents

---

[1] DDR5 DIMMs include DDR5 RDIMMs, DDR5 LRDIMMs, DDR5 SODIMMs, and DDR5 UDIMMs.

[2] HBM products include HBM2, HBM2E, HBM3, and HBMnext products.

showing the interaction between Google's server computers and the accused DDR4 and DDR5

DIMMs.  This information is important to Netlist's infringement and technical benefits analysis.

Despite Netlists' repeated efforts to explain the facially clear relevance of its document

production requests and several attempts to narrow the scope of its requests to reduce the burden

on a third party, Google plainly refused to engage.   As of today, Google has not produced a single

document in response to Netlist's requests or offered a witness for deposition testimony.

Netlist has no choice but to seek relief from the Court.  Specifically, Netlist seeks an order

compelling Google to produce, within 7 days after the Court's entrance of the order, documents

sufficient to show the following information:

1. The part numbers and quantities of Micron DDR4 LRDIMMs that have been used or imported into the United States by Google from Dec. 1, 2020 through the present.

2. The part numbers and quantities of Micron DDR5 DIMMs that have been used or imported into the United States by Google from May 1, 2021 through the present.

3. The part numbers and quantities of Micron HBM products that have been used or imported into the United States by Google from Jan. 1 2020 through the present.

4. Documents sufficient to show the location(s) where Google evaluates or analyzes any Micron Accused Memory Products to determine whether to purchase quantities of the design.

5. Presentations, testing, evaluation, simulation, qualification, or comparability studies performed or commissioned by Google sufficient to show the power regulation of Micron DDR5 DIMMs when used in Google's servers or computers, specifically: the power on/off sequence; input over/under-voltage fault detection; supply voltage to DRAMs, RCD, data buffer, SPD; and input voltage switch-over operation.

6. Documents sufficient to show how Google's servers supporting DDR5 DIMMs (supplied by Micron or another) provide power to the DIMMs, including without limitation: (1) how such servers convert the voltage received from an AC power source, a battery or another power source to voltages to be supplied to the DIMMs; (2) the voltage levels (in volts) of the input voltages supplied to the DIMMs; and (3) how such servers maintain the voltage level of the input voltages supplied to the DIMMs.

7. Documents sufficient to show how Google servers supporting DDR5 DIMMs perform functions such as providing power to the DIMMs, communicating with the DIMMS, and programing the power-up, power-down, or other power programming sequences.

8. Documents sufficient to fully describe any Training Sequence performed in Google's servers using or incorporating Micron Accused DDR4 LRDIMMs, including any

specifications and product requirement documents.[3]

The requested information and documents are relevant to both Netlist's infringement and damages claims for the patents at issue in the underlying action.

In the alternative, Netlist respectfully requests that the Court transfer this subpoena-enforcement action to the Eastern District of Texas, where the underlying patent infringement action has been pending for over a year. The E.D. Tex. court is the forum most familiar with the patents at issue, Micron's Accused Products, as well as the parties' disputes regarding U.S. sales and damages base. For example, Netlist asserted the same patents against Micron's competitor, Samsung, and that case went to trial early this year in April. *Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 21-cv-463 (E.D. Tex.). In addition, the E.D. Tex. court recently held a *Markman* hearing in the underlying patent infringement action on July 27, 2023, and heard the parties' motion to compel production of documents relating to the defendants' U.S. sales. *Netlist, Inc. v. Micron Tech., Inc.*, No. 22-cv-203, D.I. 122 (E.D. Tex. July 26, 2023).

Critically, fact discovery in the underlying patent infringement action closes on September 5, 2023. Ex. 5 (Docket Control Order) at 3.[4] Netlist's opening expert reports are due on the same day. *Id.* In light of these imminent deadlines, transferring this motion to E.D. Tex. would ensure that Netlist's discovery disputes with Google are efficiently addressed, and would avoid disrupting the E.D. Tex. court's management of the underlying litigation.

---

[3] To the extent necessary, Netlist reserve the right to seek deposition by a witness from Google and/or Alphabet to explain and authenticate the documents Google produces. *See* Exs. 15-16 (Netlist's deposition subpoenas on Google and Alphabet).

[4] Under the docket control order entered by the E.D. Tex. Court, the parties are ordered to file motions to compel by September 5, 2023. Ex. 5 (Docket Control Order).

## II.     STATEMENT OF FACTS

### A.     The Underlying Patent Infringement Action

Netlist filed its complaint on June 10, 2022, asserting six patents against Micron in the Eastern District of Texas. *Netlist, Inc. v. Micron Tech., Inc.*, No. 22-cv-203-JRG (E.D. Tex.). Specifically, Netlist asserted that the following Micron products directly and indirectly infringe Netlist's patents: DDR4 LRDIMMs (covered by the '506 and '339 patents); DDR5 RDIMMs, DDR5 LRDIMMs, DDR5 SODIMMs, DDR5 UDIMMs ('918 and '054 patents), HBM2, HBM2E, HBM3, and HBMnext products ('060 and '160 patents).

Under the existing scheduling order, the parties are to complete fact discovery and serve opening expert reports on September 5, 2023. Ex. 5 (DCO). A claim construction hearing was held on July 19, and trial is set to start on January 22, 2024.

### B.     Netlist Has Been Actively Seeking Discovery from Micron

Netlist has been actively seeking discovery from Micron. As early as November 10, 2022, Netlist served a detailed discovery letter on Micron, identifying 163 categories of documents relevant to Netlist's claims in the underlying patent infringement action. Ex. 6 (2022-11-10 Zhao Ltr). Among others, Netlist sought detailed testing, simulation, and analysis of each of the Micron Accused Products. *See, e.g. id.* at Item No. 23, 48, 66. Netlist also filed several motions to compel Micron to produce the relevant technical and sales documents. *Netlist, Inc. v. Micron Tech., Inc.*, No. 22-cv-203-JRG, D.I. 49, 73, 74 (E.D. Tex.).

In the underlying patent infringement action, Micron and Netlist dispute what constitutes U.S. sales for damages of Netlist's direct infringement claims. According to Micron, only the Accused Products directly shipped by Micron to the United States are part of the damages base. During discovery, Micron stated ███████████████████████████████████

████████████████████████████████████████████████████████████



are properly a part of the damages base for Netlist's direct or indirect infringement claims in the patent infringement action.

Netlist served subpoenas on Micron's customers, including Google, for information showing the number of Micron Accused Products purchased in, used in, or imported into the United States by Micron customers (Item Nos. 1-4).[6] Netlist also sought information from Google relevant to the operation of Micron Accused Products when in use in Google's servers (Item Nos. 5-8).

### C.    Netlist Repeatedly Narrowed the Scope of Its Discovery Requests from Google

On May 8, 2023, Netlist served document production (and parallel deposition) subpoenas on Google and Alphabet. Exs. 1-2. On May 22, 2023, Google served written responses and objections to Netlist's subpoenas. Ex. 7. Google produced no responsive documents and refused to designate a witness in response to Netlist's parallel deposition subpoena. During the parties' meet-and-confer on these subpoenas, Google claimed that Netlist's requests were too broad and did not capture the specific information needed in the underlying infringement action.

Netlist disagrees with Google's position and explained the relevance of each of its requests during the parties' meet and confer.  However, to reduce Google's burden, Netlist served narrower,

---

[5] Micron has not disclosed its revenue or transaction record of its HBM products, but was ordered by the E.D. Tex. court to do so by August 9, 2023.

[6] Similar discrepancies exist as to other Micron customers and Netlist has served more than five top Micron customers in connection with the underlying patent infringement action seeking the same type of information.

more specific requests based on Google's objections on June 8, 2023. Exs. 3-4. Google again refused to produce any responsive documents or offer a witness. Ex. 8 (Google's written objections). During the parties' meet-and-confers on these subpoenas on June 7 and July 7, 2023, Netlist repeatedly explained the relevance of each request, but Google refused to engage in any kind of compromise. Google instead questioned Netlist's motivations, requested confidential information on who else Netlist was subpoenaing, and refused to produce anything on the grounds that it believes its use of the accused products in the United States has no relevance to Netlist's direct/indirect infringement claims. *See, e.g.*, Ex. 9 at 6 (2023-06-30 Perlson Email) ("We continue to be concerned that Netlist is pursuing these burdensome, numerous subpoenas against Google and Alphabet for reasons apart from any genuine need for the discovery it is seeking in the cases it is seeking them.").

Netlist followed up again with Google in a detailed email explaining the relevance of each request and expressing Netlist's willingness to reach a compromise. Ex. 9 at 4-5 (2023-07-07 Zhao Email). Google again refused to work towards a compromise and instead demanded to know who else Netlist had served with subpoenas, and argued that Netlist's subpoenas were somehow related to separate pending litigation between the parties. See Ex. 10 (7-14 Trombetta Letter). Google further argued Netlist needed to prove its indirect infringement case in order to seek clearly relevant document production. *Id*. Google's request is plainly irrelevant and an inappropriate inquiry into confidential and privileged information of Netlist and third parties.

Although Netlist disagrees with Google's position regarding the relevance and potential burden of subpoenas as well as Google's questioning as to Netlist's motive in seeking relevant information in Google's possession, Netlist made another attempt to reach a compromise with Google by further narrowing its discovery requests to the 8 categories identified above. *Supra* at

3-4; Ex. 9 at 2-3 (2023-07-31 Zhao Email).  Google refused to provide a substantive response to Netlist's proposal.  *Id.*

Given the fast-approaching discovery and expert report deadlines in the underlying E.D. Texas Action, Netlist was forced to seek the Court's intervention and bring this Motion.

## III.    ARGUMENT

### A.    Netlist's Requests Seek Narrowly Tailored, Relevant Information Central to the Underlying Action

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Rule 26(b) also applies to "[d]iscovery sought via a subpoena issued pursuant to Rule 45." *In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *2 (D. Del. Feb. 24, 2023).

"When a party objects to discovery requests, the burden falls on the party seeking the discovery to show the relevance of the information requested." *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *2 (D. Del. May 8, 2013) (quotation omitted). "Once relevance is shown, the party opposing discovery may show why discovery, even if relevant, should not be permitted." *Id.*; *see also In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *4 (finding compliance with the subpoena is not unduly burdensome because the subpoenaed party has not provided the court with evidence showing the burden of production such as "an estimate of the amount of documents that many be responsive to the subpoena").

### 1.    Number of the Accused Products Google Uses in the U.S.

Topic Nos. 1-3 of Netlist's motion to compel are covered by Netlist's June 8, 2023 Subpoena Requests No. 7-11.  Ex. 3 at 9-10 (subpoena on Google LLC); Ex. 4 at 9-10 (subpoena on Alphabet LLC). These topics seek documents identifying the number of Micron accused products that are ultimately shipped to or used in the United States by Google.

Netlist's requested information is plainly relevant. The amount of Accused Products Google purchased from Micron and then imported into or used in the United States will be critical to determine the damages base for Netlist's direct infringement and inducement of infringement claims. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018) (35 U.S.C. § 271(b) provides liability for sales of products that were later imported into the United States by others); *see also Cal. Inst. of Tech. v. Broadcom Ltd.*, 2019 WL 11828237, at *10 (C.D. Cal. June 17, 2019) (denying summary judgment of noninfringement as to products Broadcom allegedly sold to Apple overseas but that were "eventually imported into the United States" inside Apple products).

District courts have found that third-party discovery is appropriate (and encouraged) under circumstances like this where a dispute exists as to whether certain products ultimately ended up being used or imported into the United States by the defendants' customers. *See, e.g., M2M Sols. LLC v. Motorola Sols., Inc.*, 2016 WL 70814, at *21 (D. Del. Jan. 6, 2016) ("Plaintiff could have taken some third-party discovery of these customers to prove that at least some accused products were eventually imported into the U.S."); *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 3888455, at *1 (D. Colo. Jan. 30, 2017) (granting motion to compel Walgreens, a third party customer of the accused infringer Dawgs, to produce documents "sufficient to show, on an annual basis and by specific product and model number and date, all sales [Walgreens] made since 2006, in or from the Untied States to customers, of footwear products [Walgreens] initially purchased or acquired from U.S.A. Dawgs [] including but not limited to the quantify of sales and price(s) at which such sales were made to customers").

Netlist's requests are narrowly tailored. After the parties' meet and confer, Netlist provided a specific temporal limitation on the requests, which further lifted the burden on Google: DDR4

LRDIMMs (December 1, 2020 through the present); DDR5 DIMMs (May 1, 2021 through the present); and HBM products (January 1 2020 through the present). Ex. 9 at 2-3. Google has not shown any undue burden to produce such documents or information—and it cannot, because such information is typically stored in the ordinary course of Google's business. *See Crocs*, 2017 WL 3888455, at *1; *see also In re Subpoena Issued to Cisco Sys., Inc.*, 2010 WL 3155895, at *2 (N.D. Cal. Aug. 9, 2010) (compelling third party to produce worldwide sales data of the accused products); *Kilopass Tech. Inc. v. Sidense Corp.*, 2011 WL 2470493, at *3 (N.D. Cal. June 21, 2011) (compelling defendants' customer, Amimon, to produce documents about its "use and implementation of the accused [products/technologies] as well as financial information concerning the sales of any chips or products containing the accused Sidense technology"); *see also In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *4 (finding compliance with the subpoena is not unduly burdensome because the subpoenaed party has not provided the court with evidence showing the burden of production such as "an estimate of the amount of documents that many be responsive to the subpoena").

Google objected to Netlist's requests by arguing that it need not produce documents showing where it ultimately uses the accused Micron products because "Netlist has not set forth any evidence of sales outside the United States by Micron to Google where Micron knows the products will then be used in the United States." Ex. 10 at 5 (2023-07-14 Trombetta Ltr). Google's objection completely misses the mark. Discovery is appropriate when it could potentially lead to relevant information related to any of Netlist's claims or positions in the patent infringement action. Fed. R. Civ. P. 26(b). Netlist is not required to prove to Google each element of its induced infringement claim for purposes of enforcing this subpoena. *See In re Motion to Compel Compliance With a Subpoena AD Testificandum Lynk Labs, Inc.*, 2023 WL 2311948, at *2 (N.D.

Cal. Feb. 28, 2023) (explaining that even if the movant cannot ultimately carry its burden to prove willful infringement, it "has articulated a reasonable basis for seeking discovery [] in connection with that claim").

Google also injected a purported "double recovery" argument which appears to suggest that if Google discloses information regarding the number of Micron products Google used in the United States, Netlist will get a "double recovery" based on "(1) the alleged sale of the accused device and then (2) a subsequent use of the same device." Ex. 10 (2023-07-14 Trombetta Ltr.). Google's argument again fails. *First*, Netlist's discovery requests simply seek relevant information relating to the damages base of its claims against Micron. Whether Netlist's damages base is appropriate or there is any concern about so-called "double recovery" is an issue that Netlist will address with Micron in the underlying patent infringement action. Netlist is not required to disclose its damages theory or damages expert report, both of which are Netlist's attorneys' work product at this stage of the case, to Google or any other third party in order to receive relevant discovery. *Second*, there is simply no concern of double recovery. As explained above, *supra* at 5-6, Netlist seeks information showing the numbers of Micron Accused Products used in or imported into the United States by Google to address products that are not "shipped to the United States" directly by Micron but otherwise qualify as "U.S. sales" for Netlist's damages base.

Google must be ordered to produce the requested unit numbers.

### 2.     Locations Where Google Qualifies or Tests the Accused Products

Topic No. 4 seeks documents identifying the locations where Google tests or qualifies Micron Accused Products.  This is Request No. 12 of Netlist's June 8 subpoenas.  Ex. 3 at 10; Ex. at 10.

This topic is relevant to determine whether substantial activities of a sales transaction occurred in the United States and therefore is properly within the damages base for Netlist's infringement claims. The Federal Circuit found in *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1309 (Fed. Cir. 2015) that it is appropriate to consider the entire sales cycle of the accused products in assessing damages, including evidence showing that "the activities related to designing, simulating, testing, evaluating, qualifying the chips by Marvell as well as by its customers occur[ ] in the United States." Google again has not provided any basis showing that simply disclosing the locations of its testing or qualification of the accused products would be overly burdensome. *In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *4 (finding compliance with the subpoena is not unduly burdensome because the subpoenaed party has not provided the court with evidence showing the burden of production such as "an estimate of the amount of documents that may be responsive to the subpoena"). Google's letter dated July 14, 2023 suggests that it does not object to producing documents in response to this request for pre-purchase information; instead, Google only objects to Netlist's request for information "regarding what happens *after* the sales have occurred." Ex. 10 at 3 (emphasis in original).

Google must produce documents sufficient to show the locations of its testing and qualification of Micron's Accused Products.

### 3. Documents Showing How Accused Products Function Within Google Products

Topics No. 5-8 seek documents showing how Micron's accused DDR5 DIMMs and DDR4 LRDIMMs function in Google's servers or computers, and these are covered by Netlist's June 8 subpoena Requests Nos. 1, 3, 4 and May 8 subpoena Request No. 2. *See* Ex. 1 at 10; Ex. 2 at 10; Ex. 3 at 9; Ex. 4 at 9.

Specifically, Topics 5, 6, and 7 ask Google to produce documents related to the interactions between Google's servers and Micron's DDR5 DIMMs, particularly with respect to certain power-management features that are relevant to Netlist's '918 and '054 patents. For example, the claims of the '918 patent are directed to a memory module that receives power from the host system via the edge connections of the memory module. *E.g.* Ex. 11 ('918 patent) at 38:18-24 (claim 1). Certain claims also require the claimed "buck converters" and "converter circuit" on the memory module to be configured to receive a "pre-regulated input voltage." *E.g. Id*. ('918 patent) at 39:60-67 (claim 16). Netlist's requests seek documentation related to the input voltage provided to the Micron DDR5 DIMMs in Google's servers, *e.g.*, whether and how that voltage is regulated during normal operations and during power-up/power-down. *See supra*, at 3-4 (Topics 5-7). Netlist's requests also seek *internal* Google presentations, testing, evaluation, simulation, qualification, or comparability studies regarding these and other features, such as the supply voltages provided to the various components on the memory module, *see supra*, at 3-4 (Topic 5), which are relevant to Netlist's infringement and technical benefits analyses for the '918 and '054 patents. For example, claim 1 of the '054 patent requires that the claimed memory module include "a plurality of components" (e.g., DRAM or a "first circuit" such as an RCD) coupled to the printed circuit board of the memory module, and that "each component of the plurality of components coupled to at least one regulated voltage of the at least three regulated voltages." Ex. 12 ('054 patent) at 38:32-44; *see also, e.g.*, Ex. 11 ('918 patent) at 38:33-52 (claim 1). Google's internal documentation regarding the supply voltages to these components (*e.g.*, acceptable tolerance of the supply voltage) is thus relevant to Netlist's claims in the underlying patent infringement action.

Topic No. 8 asks for documents relevant to the Training Sequences performed in Google servers that use Micron DDR4 LRDIMMs. The term "Training Sequence" is a defined term in the

subpoena that refers to the training sequences in certain industry standards identified in the subpoena, JESD 82-32a. Exs. 3/4 at 6. Through the meet-and-confer process, Netlist narrowed the specific training sequences to two specific training modes listed in the subpoena: MREP and MRD training. As Netlist explained to Google multiple times, whether Google's servers incorporating Micron DDR4 LRDIMMs use these training modes is relevant to Netlist's infringement and technical benefits analysis for the '506 patent, which is directed to a load-reducing memory module architecture with data buffers that can perform timing adjustments to certain signals during a read operation, for example, as in a computer system such as Google's servers.  Ex. 13 ('506 patent) at 19:16-55.

Netlist has not been able to receive documents showing the requested information directly from Micron because Micron does not have in its possession testing results or detailed datasheets showing the power management function or programming of Google's servers. When discovery first started in the underlying patent infringement action, Netlist served a discovery letter to Micron, which sought detailed testing, simulation, datasheets, and source code materials relating to the operation of Micron accused DDR5 DIMMs and DDR4 LRDIMMs as early as November 2022. Ex. 6 (2022-11-10 Discovery Ltr). Micron never produced any document showing how its products operate in Micron customers' servers or computers, although Micron explained during the parties' meet and confer that it has produced all validation and testing documents relating to the accused products in its possession. Netlist also asked Google whether it shared any such information with Micron, but Google never admitted to having done so.  Ex. 9 at 4 (2023-07-07 Zhao Email to Perlson) ("[Netlist] repeatedly asked you to confirm if Google/Alphabet shared such information with Micron, but you have not provided any answer.")

Courts in this District have granted motions to compel subpoenas for document production and depositions on a third-party that incorporated defendant's accused products in its own products. For example, in *Cradle IP LLC v. Tex. Instruments, Inc.*, the plaintiff moved to compel compliance with subpoenas by non-party Nokia Siemens Networks U.S. relating to its base transceiver stations that TI (defendant) identified as "incorporating certain of the accused devices." 2013 WL 1794992, at *1 (D. Del. Apr. 29, 2013). The court granted the motion to compel subpoenas seeking deposition and documents "sufficient to identify 'any operation systems or base software' that supports Nokia-developed applications for the base transceiver stations; the 'programming or use of hardware semaphores' in certain accused devices that are incorporated into the base transceiver stations; and the supply chain for the base transceiver stations." *Id.* at *1, *3.

Google has not explained how many documents responsive to these topics are in its possession or how production of such documents would be overly burdensome. *In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *4 (finding compliance with the subpoena is not unduly burdensome because the subpoenaed party has not provided the court with evidence showing the burden of production such as "an estimate of the amount of documents that may be responsive to the subpoena"). Thus, Google must produce the requested technical documents.

**B.     Alternatively, Netlist's Motion Should Be Transferred to the Eastern District of Texas Where the Underlying Patent Infringement Action Is Pending**

In the alternative, Netlist respectfully requests that the Court transfer this subpoena to the Eastern District of Texas. Rule 45(f) allows the transfer of subpoena-related motions to the issuing court upon the Court's finding of exceptional circumstances. Fed. R. Civ. P. 45(f). The Advisory Committee's comments explained that transfer to the issuing court where the underlying action is pending is warranted when the interests in having the issuing court decide the discovery dispute "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of

the motion" or when transfer can "avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment, subdivision (f).

District courts in this Circuit have consistently granted motions to transfer subpoena-related actions to the issuing courts where the underlying action involves complicated issues and where the issuing court has more knowledge of the intricacies of the complex litigation, impending discovery deadlines, and burden on the parties. *See, e.g.*, *N. Atl. Operating Co., Inc. v. Dunhuang Grp.*, 2018 WL 3381300, at *2 (D. Del. July 11, 2018) (granting motion to transfer subpoena-enforcement action "because the issuing court is better suited to decide whether the subpoena should be enforced"). Transferring this subpoena-enforcement action to E.D. Tex. is appropriate.

***First***, the E.D. Tex. Court is better positioned to decide the disputes between Netlist and Google. Netlist's lawsuit against Micron has been pending before Judge Gilstrap for over a year since June 10, 2022. Ex. 14 (Patent Action Docket sheet). Further, the E.D. Tex. Court conducted a trial earlier this year in April concerning Netlist's litigation against Samsung for infringement of the same patents-at-issue. *Netlist, Inc. v. Samsung*, No. 21-cv-463, D.I. 479 (E.D. Tex. Apr. 21, 2023). On July 26, the E.D. Tex. Court also held a *Markman* hearing for the underlying patent-infringement action between Netlist and Micron. Because of the E.D. Tex. court's familiarity with Netlist's patents-in-suit, Micron's accused products, and the relevant memory technology, it is equipped to decide the need and burden on the parties in connection with Netlist's subpoena on Google more efficiently. In addition, as explained above, Google is one of the third party customers using Micron's accused products in the underlying patent infringement action. Having Netlist's discovery disputes against Micron's customers resolved in the same court can best serve the interests of efficiency and judicial economy. *See N. Atl. Operating*, 2018 WL 3381300, at *2

(granting motion to transfer subpoena-enforcement action "because the issuing court is better suited to decide whether the subpoena should be enforced"); *see also In re Daimler Truck N. Am., LLC*, 2023 WL 2456069, at *2 (D. Del. Mar. 10, 2023) "(Transfer is likewise appropriate because the issuing court has greater involvement and more familiarity with the underlying patent litigation such that transfer back to that court promotes judicial economy."); *Meijer Inc. v. Ranbaxy Inc.*, 2017 WL 2591937, at *3 (E.D. Pa. June 15, 2017) (considering the possibility that "there may be some additional discovery disputes of the same nature as that at issue here" before the issuing court as a fact "counsels in favor of transfer").

**Second**, transferring this action to E.D. Tex. can avoid any potential interruption to the trial schedule. The underlying patent infringement action is on a fast track. Fact discovery and opening expert reports deadlines are September 5, 2023; expert discovery is set to complete by October 10, 2023; and trial will start on January 22, 2024. Ex. 5 (E.D. Tex. Docket Control Order). Given the upcoming deadlines, the Court's decision on Netlist's motion to compel may require modifications to the schedule in the underlying case to ensure that Netlist has a fair opportunity to conduct follow-up discovery and to include the requested materials in its expert reports. Thus, it is important for the issuing court to exercise its document management by deciding the scope of third party discovery as disputed by Netlist and Google in this subpoena and to determine the appropriate timeline for compliance. *See N. Atl. Operating*, 2018 WL 3381300, at *2 ("resolution of Petitioners' motion is time-sensitive, a factor supporting transfer.").

**Third,** transferring this subpoena enforcement action to the Eastern District of Texas would not cause an undue burden on Google, a multinational corporation with presence in various places

in the United States, including in Texas.[7] *See In re Subpoena to Amazon.com, Inc.*, 2019 WL 13192100, at *2 (W.D. Wash. Nov. 19, 2019) (noting that "it is hard to image what burden Amazon fears if it is required to defend its objection in the Southern District of Texas" because "Rule 45(f) authorizes its counsel to appear in that district without having to associate local counsel, all federal district courts utilize an electronic, web-based docketing system," "it is highly unlikely that the presiding judge would hear oral argument," and subpoena compliance would still occur in Seattle). Moreover, the parties do not dispute that any issues regarding the location of production or a deposition should be able to be easily resolved. For example, any document production would be done electronically; and any deposition can be remote or, if not remote, at the witness's location. *See also N. Atl. Operating*, 2018 WL 3381300, at *2 ("Respondent's obligations to comply would appear to be identical regardless of which court actually enforced the subpoena." (citations omitted)); *Meijer*, 2017 WL 2591937, at *2 (granting motion to transfer and finding the burden on the subpoenaed entity would be slight after the transfer and is outweighed by the reason in support of the transfer where there had "been no need for anyone from [the third party] to travel outside of this Court's jurisdictional boundaries to respond to the subpoenas").

## IV.   CONCLUSION

For the reasons discussed above, Netlist's motion to compel should be granted.

---

[7] https://careers.google.com/locations/dallas/ (Google listing jobs in Dallas).

CONNOLLY GALLAGHER LLP

OF COUNSEL:

/s/ Alan R. Silverstein
Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7322
asilverstein@connollygallagher.com

Jason G. Sheasby
Yanan Zhao
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
jsheasby@irell.com
yzhao@irell.com

*Attorneys for Plaintiffs Netlist, Inc.*

Dated:  August 9, 2023
Public Version Dated:  August 17, 2023