**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NETLIST, INC., | ) |
| | )   Misc. Action No. 1:23-mc-00369-MN |
|       Petitioner, | ) |
| | )   Underlying lawsuit pending in the United |
|   v. | )   States District Court for the Eastern District |
| | )   of Texas, Civ. No. 2:22-cv-203-JRG |
| GOOGLE LLC AND ALPHABET INC. | ) |
| | )            **REDACTED** |
|       Respondents. | )          **PUBLIC VERSION** |
| | ) |
| | ) |

## OPPOSITION TO PETITIONER NETLIST, INC.'S MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENAS

OF COUNSEL:
David A. Perlson
Jonathan Tse
Michael Trombetta
QUINN EMANUEL URQUHART & SULLIVAN
LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Deepa Acharya
Jared Newton
QUINN EMANUEL URQUHART & SULLIVAN
LLP
1300 I Street, NW
Washington, DC 20005
(202) 538-8000

Kelly E. Farnan (No. 4395)
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
*Attorneys for Respondents Google LLC and*
*Alphabet Inc.*

Dated: September 1, 2023

## <u>NOTES ON CITATIONS</u>

- *Netlist v. Micron*, No. 22-cv-203 (E.D. Tex.) is referred to as *Micron-203*.

- Petitioner Netlist, Inc. is referred to as "Netlist" herein.

- Respondent Google LLC is referred to as "Google" herein.

- Respondent Alphabet Inc. is referred to as "Alphabet" herein.

- *Netlist, Inc. v. Google LLC*, Civil Action No. 3:09-5718 (N.D. Cal.) is referred to herein as the "California Action."

- *Samsung Electronics Co., LTD. et al. v. Netlist, Inc.*, Civil Action No. 1:21-cv-01453 (D. Del.) is referred to herein as the "Delaware Action."

- All emphasis added unless otherwise noted.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

Background .......................................................................................................................... 2

I.      Netlist Serves Its First Set Of Subpoenas On Google And Alphabet ................................ 2

II.     Netlist Serves A Second Round of Eight Subpoenas Without Withdrawing The
        First Set ................................................................................................................................. 4

III.    Netlist Serves A Third Round Of Subpoenas On Google And Alphabet ........................... 6

IV.     Netlist Moves To Compel Without Further Meet And Confer ............................................ 8

Legal Standard ..................................................................................................................... 9

Argument ............................................................................................................................. 10

I.      There Is No Basis To Compel Anything From Alphabet ................................................... 10

II.     Netlist's Revised Requests Still Seek Overly Expansive And Sensitive
        Information Not Tied To Any Relevance In The Micron Case ........................................... 10

        A.      Revised Requests Seeking Google's Purchases of Micron Products (Nos.
                1-3) ........................................................................................................................... 10

        B.      Revised Request No. 4 Seeking Documents Regarding the Location of
                Google's Evaluation and Use of Micron Products ................................................. 12

        C.      Revised Request Nos. 5-7 Seek Internal Google Documents Regarding
                How Google's Unaccused Products Work ............................................................... 13

III.    Netlist's Request For Transfer Should Be Denied .............................................................. 15

IV.     The Court Should Award Attorneys' Fees .......................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accusoft Corp. v. Quest Diagnostics, Inc.*,
2012 WL 1358662 (D. Mass. April 18, 2012)........................................................................19

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015)............................................................................................12

*Crocs, Inc. v. Effervescent, Inc.*,
2017 WL 3888455 (D. Colo. Jan. 30, 2017).........................................................................11

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998)................................................................................................19

*In re Daimler Truck N. Am., LLC*,
2023 WL 2456069 (D. Del. Mar. 10, 2023) .................................................................17, 18

*In re Gen. Mfg. Indus., LLC*,
2023 WL 2213199 (D. Del. Feb. 24, 2023) ..................................................................13, 18

*In re I.M. Wilson, Inc.*,
21-MC-122-RGA, 2022 WL 1239905 (D. Del. Apr. 27, 2022) ............................................18

*M2M Sols. LLC v. Motorola Sols., Inc.*,
No. CV 12-33-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016) ...............................................11

*In re Mathews*,
18-MC-153-LPS, 2018 WL 5024167 (D. Del. Oct. 17, 2018) ..............................................18

*Meijer Inc. v. Ranbaxy Inc.*,
2017 WL 2591937 (E.D. Pa. June 15, 2017) .......................................................................17

*N. Atl. Operating Co., Inc. v. Dunhuang Grp.*,
2018 WL 3381300 (D. Del. July 11, 2018) ..............................................................16, 17, 18

*Netlist, Inc. v. Micron Technology, Inc. et al.*,
No. 22-cv-294 (E.D. Tex.)......................................................................................................6

*Netlist, Inc. v. Samsung Electronics Co., Ltd. et al.*,
No. 22-cv-293 (E.D. Tex.)......................................................................................................6

*Precourt v. Fairbank Reconstruction Corp.*,
280 F.R.D. 462 (D.S.D. 2011) ..............................................................................................20

*Rardon v. Falcon Safety Prods., Inc.*,
23-1594, 2023 WL 5347298 (3d Cir. Aug. 21, 2023) ........................................................9, 19

*In re Subpoena to Amazon.com, Inc.*,
  2019 WL 13192100 (W.D. Wash. Nov. 19, 2019) .................................................................18

*Estate of Zahau v. Shacknai*,
  No. 13-CV-01624 .................................................................................................................20

## **Other Authorities**

Fed. R. Civ. P. 26(b) ..............................................................................................................10

Fed. R. Civ. P. 45 ...................................................................................................... *passim*

Fed. R. Civ. P. 45(c) ..............................................................................................................15

Fed. R. Civ. P. 45(d) ........................................................................................................10, 19

Fed. R. Civ. P. 45(d)(1) ............................................................................................1, 2, 9, 18, 19

Fed. R. Civ. P. 45(f) .................................................................................................... *passim*

In its Motion to Compel, Netlist contends "Netlist Repeatedly Narrowed the Scope of Its Discovery Requests from Google." Br. 6. The actual record shows the opposite. For nearly three months since Netlist served its first subpoenas in *Micron-203*, Netlist requested and pushed for an overbroad and increasing amount of materials from Google and Alphabet. For example, Netlist's requests sought documents from Google clearly in Micron's possession, including documents Micron sent Google and Google's communications with Micron. Yet, Netlist refused to withdraw a single document request. Netlist also refused to withdraw its redundant subpoenas calling for compliance—for identical requests—in both Delaware and Texas. Netlist has now served thirty-two subpoenas to Google and Alphabet in three different cases.

Just over a week before Netlist filed this Motion on August 9, Netlist did eventually serve a revised set of document requests in *Micron-203*. Netlist's "narrowed" requests were quite different. For example, they omitted more than half of the combined requests from the two sets of subpoenas that Netlist served on May 8 and June 9. But just eight days later, Netlist demanded an immediate meet and confer, and said it would file this Motion the next day. Google indicated it would be able to meet and confer the day after or the day after that. Netlist filed its motion anyway. This set of facts alone should warrant denial of Netlist's Motion for its failure to follow basic rules of discovery and the most basic aspect of Rule 45: "[a] party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Despite Netlist's conduct, Google continued to investigate a potential production of documents pursuant to the revised document requests. Google will produce a chart showing the part numbers and quantities of Micron DIMM products Google has purchased that are responsive to the revised requests. Google will also produce documents regarding locations of laboratory

machines utilized for testing of products purchased from Micron.  Google will further produce internal technical documents relating to the supply of power to the DIMMs.  Had Netlist met and conferred prior to filing this Motion and given Google time to investigate the revised requests, Google would have informed Netlist of the responsive documents it intends to produce in response to its requests.  Nothing further should be ordered produced.  Netlist should be ordered to pay Google's and Alphabet's costs and fees for responding to this Motion and to Netlist's numerous subpoenas.  Fed. R. Civ. P. 45(d)(1).

Even though it served identical subpoenas on Google and Alphabet for compliance in E.D. Tex. and chose to move to compel in Delaware, Netlist makes an alternative request to transfer this Motion to the Eastern District of Texas.  But Netlist has not established the "exceptional circumstances" to necessitate transfer under Rule 45(f) that courts in this district routinely find are required in denying transfer requests.  This request should also be denied.

## Background

### I.   NETLIST SERVES ITS FIRST SET OF SUBPOENAS ON GOOGLE AND ALPHABET

Netlist served both Google and Alphabet with eight subpoenas collectively for documents and deposition testimony in *Micron-203* on May 8, 2023.[1]  Exs. 1-4, I-L.[2]  While Netlist ignores the actually served requests in the May 8 Subpoenas, as Google and Alphabet detailed in their May 22 objections, all eight subpoenas were objectionable in numerous respects.  Exs. 7, 8.  Initially,

---

[1] Netlist is currently suing Google and/or Alphabet in two separate litigations.  In the California Action, Netlist accuses memory modules that Google purchases from Samsung of infringing one of its patents.  That case is currently stayed until its suit asserting the same patent against Samsung is resolved.  In the Delaware Action, Netlist accuses Google of infringing three additional Netlist patents.  Those allegations likewise relate to memory modules that Google purchases from Samsung.  The case is currently proceeding before Magistrate Judge Hall and Judge Andrews, and a *Markman* hearing is set for October 2023.

[2] All numbered exhibits (e.g., 1, 2, etc.) referenced herein are attached to Petitioner's Motion.  All lettered exhibits (e.g., A, B, etc.) are attached to Respondents' Opposition.

there was no basis or reason to serve Alphabet, a parent holding company of Google with no business operations of its own.[3]  Alphabet Inc. Form 10-K, United States Securities and Exchange Commission (2015), available at https://www.sec.gov/Archives/edgar/data/1288776/000165204416000012/goog10-k2015.htm. Nor was there any legitimate reason or basis for, as to both Google and Alphabet, Netlist to serve identical subpoenas, all served from the Eastern District of Texas, for compliance in **both** Delaware and Texas.[4]  Exs. 1, 2 at 6-7; Ex. 8 at 2-3.  *See also* Exs. K, L.

Further, Google noted in its May 22 objections that several of Netlist's document requests sought documents that would clearly be in Micron's possession, such as "Google's Communications with Micron" regarding the Micron accused products (RFP No. 4) or documents provided by Micron to Google or Google to Micron regarding the accused products (RFP Nos. 5 and 6).  Ex. 8 at 8-9.  By even requesting these materials that Netlist could and should get from Micron in the first instance, Netlist showed how it was ignoring its obligations under Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" from the get-go.  Other requests and topics were objectionable by, for example, seeking third party Google's internal and uncommunicated decision making, testing, evaluations, and related materials regarding the Accused Products.  *Id.* at 6-7, 11-13.  Notably, Netlist does not seek to compel a single request on its document topics from the May 8 subpoenas in the manner they were originally written.

The parties met and conferred as to the May 8 Subpoenas on June 7.  Ex. 9 at 9.  Netlist indicated it was looking for two types of documents.  *Id.*  First, Netlist was looking for Google's

---

[3]  As of October 2, 2015, Google is a subsidiary of XXVI Holdings Inc., a subsidiary of Alphabet.
[4]  Netlist later said in relation to Google's objections to redundant subpoenas: "Please stop raising bogus claims of burden (which at this point amount to a bit of word processing)."  Ex. C at 1.

internal documents that discuss what Google, as a customer, is interested in or focuses on when purchasing Micron products, e.g., RFP Nos. 1, 2, 3, 6. *Id*. Netlist indicated these documents are relevant to the hypothetical negotiation because they would reflect benefits to customers from the claimed technology. *Id*. Google noted that while benefits from a claimed technology could be relevant, Google's uncommunicated/internal analysis of potential benefits would not be relevant to the hypothetical negotiation as neither Netlist nor Micron would have knowledge of that in such hypothetical negotiation. *Id*. Google asked Netlist to send authority if it had it. *Id*. Google and Alphabet reiterated this request in their confirming email on June 14. *Id*.

Second, Netlist indicated it was interested in documents concerning where Google tests and qualifies the products it buys from Micron. *Id*. Google noted it was not clear from the requests that Netlist was seeking such documents and/or that such documents would even be responsive to the requests. Netlist indicated in response that it may serve additional subpoenas with additional document requests. *Id*. Google also indicated that even had they been requested, anything relevant to the location of these purchases should be obtained from Micron, and what Google does with the products after it buys them should not be relevant. *Id*. Again, Google asked for case law to the extent Netlist disagreed, and followed up on that request on June 14. *Id*.

The parties agreed to table the substantive discussion of Netlist's also objectionable deposition topics, including due to the overlap of issues with the document requests. *Id*. at 10. The parties also agreed to table the discussion of Alphabet. *Id*. at 9. But Netlist did not agree to narrow or withdraw any topic. Nor did it agree to withdraw any of its redundant subpoenas.

## II. NETLIST SERVES A SECOND ROUND OF EIGHT SUBPOENAS WITHOUT WITHDRAWING THE FIRST SET

Two days after the June 7 meet and confer, Netlist served a second set of subpoenas in *Micron-203*. Exs. 3, 4, 15, 16, M-P. Again, Netlist served four subpoenas on each of Google and

Alphabet, all served from E.D. Tex. but again separately requesting compliance in Delaware and Texas.  *Id*.  This now raised the total number of subpoenas served on Google and Alphabet to sixteen.

Netlist represents to the Court that "to reduce Google's burden, Netlist served narrower, more specific requests based on Google's objections on [June 9], 2023."  Br. 6-7.  That is demonstrably false.  In a June 16 email, Netlist stated it "served additional subpoenas on Google & Alphabet given [their] assertion that requested subject matters were outside the scope of the prior subpoenas."  Ex. 9 at 8.  Netlist did not withdraw any of the earlier served eight subpoenas and still seeks to compel at least part of RFP No. 2 from the May 8 subpoenas.  Br. 12.

Once again, these supposedly "narrowed" requests were objectionable in numerous respects.  Some of the requests were not even limited to Micron's accused products, such as RFP Nos. 1-3, 9-11.  Exs. 3, 4 at 5-6.  And others sought documents regarding the operation of Google's own unaccused products, systems, and devices, such as RFP Nos. 1-7.  Netlist seeks to compel portions of only some of these RFPs from its June 9 Subpoena—RFP Nos. 1, 3, 4, 7-10, and 12.  Ex. 9 at 3.  And yet again, in addition, Netlist served deposition subpoenas on June 9 that contained similarly broad and burdensome topics.  Exs. 15, 16.

The parties had another meet and confer on July 6.  As noted above, Google had been requesting the authority that Netlist committed to providing in the parties' June 7 meet and confer discussing the May 8 Subpoenas.  Netlist eventually did provide an email with cited authority three weeks later on June 29.[5]  Ex. 9 at 6.  Google demonstrated Netlist's cited authority was irrelevant in an email the next day, June 30.  *Id*. at 5.  Based on the parties' correspondence, Google thought

---

5   Even though Netlist committed to provide authority in the June 8 meet and confer, Netlist accused Google of dodging meet and confers while it waited for Netlist to provide the authority the parties were to meet and confer about.  Ex. C.

the parties were to meet and confer on the May 8 Subpoenas.  Netlist, however, was not interested in discussing the May 8 Subpoenas, but instead wanted to discuss its newer June 9 Subpoenas. Google indicated it was happy to discuss the June 9 subpoenas but reiterated the threshold problems with all of Netlist's subpoenas, such as (1) requests for documents and information regarding non-party Google's internal decision-making are not relevant or proportional to any claims or defenses in Netlist's infringement case against Micron; and (2) requests for documents and information regarding Google's use of any allegedly infringing devices after their sale is irrelevant and not proportional to the needs of the case, given that Netlist has accused the sale of the device as the act of infringement against Micron.  Ex. 10 at 1.  Once again, Netlist did not agree to narrow or withdraw any document request or deposition topic.  Nor did it agree to withdraw any of its redundant subpoenas.

After the July 6 call, Netlist provided further authority that allegedly supported the extensive discovery it sought.  Ex. 9 at 4.  Google responded on July 14, again demonstrating Netlist's cited caselaw was inapposite.  Ex. 10 at 4-5.  Netlist did not respond to Google's letter.

### III.   NETLIST SERVES A THIRD ROUND OF SUBPOENAS ON GOOGLE AND ALPHABET

On June 22, Netlist served eight more subpoenas on Google—four in *Netlist, Inc. v. Micron Technology, Inc. et al.*, No. 22-cv-294 (E.D. Tex.) and four in *Netlist, Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 22-cv-293 (E.D. Tex.).  Ex. Q.  On the same day, Netlist served another eight identical subpoenas on Alphabet, four in *Netlist, Inc. v. Micron Technology, Inc. et al.*, No. 22-cv-294 (E.D. Tex.) and four in *Netlist, Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 22-cv-293 (E.D. Tex.).  *Id*.  All were served from the Eastern District of Texas and with identical subpoenas again calling for production in both Texas and Delaware.  By this time, Netlist had served *sixteen* pending subpoenas to Google and *sixteen* further identical subpoenas to Alphabet.

The information sought in these June 22 subpoenas overlapped significantly with the

subject matter sought in the prior subpoenas.  For example, both the June 9 and June 22 subpoenas sought the same purchase and sale information for Micron DDR4 LRDIMM products, including part numbers, quantities purchased, and the number of Micron products allegedly used or incorporated into Google's own products.  (*Compare* Exs. 3, 4 at RFP No. 7 *with* Exs. D, E at RFP No. 1.)  Both sets of subpoenas sought information regarding the percentage of such products made, used, sold, or offered for sale in the United States or imported into the United States. (*Compare* Exs. 3, 4 at RFP Nos. 8-9 *with* Exs. D, E at RFP No. 3.)  And Netlist also copied and pasted certain requests from the June 9 subpoenas into the June 22 subpoenas seeking the locations where Google allegedly evaluates, analyzes, or takes possession of Micron's products.  (*Compare* Exs. 3, 4 at RFP Nos. 12-13 *with* Exs. D, E at RFP Nos. 7-8.)

Given this incredible volume of thirty-two subpoenas, and the overlap between them, on June 23, Google asked Netlist to withdraw all these served on Google and Alphabet and serve pointed, reasonable, subpoenas on Google in a single jurisdiction, to the extent there is actually proportional, relevant discovery to be had from Google.  Ex. 9 at 7.  Google pointed out that these serial, redundant subpoenas further showed that Netlist is not complying with its obligations to avoid imposing undue burden or expense on Google and Alphabet under Rule 45.  Netlist again refused to withdraw any subpoena.  *Id.*

On June 29, Netlist changed the deadlines to serve objections to these subpoenas in the -293 and -294 cases from July 10 to August 4, stating "[w]e recently learned that Micron and Samsung are withholding discovery into entire classes of accused products, and are working to obtain that discovery.  We will keep you posted on any developments."  Ex. C at 2.  In response, Google noted that it did not have the context to understand how Samsung's and Micron's discovery impacts the pending subpoenas, but that the appropriate and less burdensome course would be for

Netlist to simply withdraw the redundant, numerous subpoenas rather than change their response dates. *Id*. Netlist refused. *Id*. at 1.

Google provided its objections on August 4. Netlist has not since contacted Google regarding these sixteen June 23 subpoenas.

## IV.   NETLIST MOVES TO COMPEL WITHOUT FURTHER MEET AND CONFER

More than two weeks after Google's July 14 letter regarding the May 8 and June 9 Subpoenas, on July 31, Netlist emailed Google with a "compromise" list of eight requests it now seeks to compel in *Micron-203*. Ex. 9 at 2-3. Despite the significant variation from the subpoenas served almost three months earlier and its own delay in responding to Google's most recent and other correspondence, Netlist asked that Google respond in two days, by August 2. *Id*. at 3. On August 2, Google responded that it was analyzing Netlist's proposal but would not be able to respond in such a short timeframe. *Id*. at 2. Google also reiterated that it would prefer not to deal with Netlist's numerous subpoenas in a piecemeal manner. *Id*. Given their overlap, Google asked that Netlist make a proposal regarding documents for all its subpoenas served on Google and Alphabet to date. *Id*. Netlist declined to do so. *Id*. Instead, it demanded a date certain for a response to its compromise provided just two days earlier for *Micron-203* only. *Id*.

The evening of August 8 Netlist demanded that Google respond "by the end of today" whether Google will produce the documents from its newly crafted requests sent just days earlier "or your availability for a meet and confer with Delaware local counsel today or tomorrow. We plan on filing the motion to compel by August 9." *Id*. at 1. Google explained it was investigating the new proposed compromise, quite different in scope from the subpoenas served many weeks earlier, but needed additional time to do so, especially in light of the fact that summer travel schedules for key employees at Google, who were necessary for this investigation, presented some additional challenges. *Id*. Netlist refused to wait. Instead, on August 8 Netlist sent Google its

already drafted motion to compel the revised new requests it had sent to Google the week before and said it would file its motion the next day. *Id*. Google responded on August 9 again noting the improper nature of Netlist's rush to Court. Ex. F at 1. Google also noted that it could meet and confer on August 10 or 11. *Id*. Netlist did not respond and instead filed this Motion on August 9.

<u>**Legal Standard**</u>

Rule 45 of the Federal Rules of Civil Procedure addresses third party compliance with a subpoena. Fed. R. Civ. P. 45. The district court where compliance is required decides disputed issues relating to the subpoena except upon transfer to the issuing district where the underlying litigation is pending. *See* Fed. R. Civ. P. 45(f). "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." *Id*.

Rule 45 further mandates that "[a] party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required ***must enforce*** this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id*.

While Netlist argues "[d]iscovery is appropriate when it could potentially lead to relevant information related to any of Netlist's claims or positions in the patent infringement action. Fed. R. Civ. P. 26(b)." Br. 10. That standard no longer applies even for party discovery, *id*. (amended in 2015, requiring any discovery be "proportional to the needs of the case"), but it certainly does not apply for third party discovery. Further, whether documents and information are "relevant" does not end the inquiry in terms of demanding information through a subpoena from third parties. *Rardon v. Falcon Safety Prods., Inc.*, 23-1594, 2023 WL 5347298, at *2 n.6 (3d Cir. Aug. 21, 2023) (holding that in analyzing whether a subpoena presents an "undue burden" in the related

context of a motion to quash a subpoena under Rule 45(d), relevance is one of only a multitude of factors for consideration).

## Argument

### I.   THERE IS NO BASIS TO COMPEL ANYTHING FROM ALPHABET

Netlist's four subpoenas served on Alphabet that require compliance in Delaware were served without any factual basis that Alphabet would even have any responsive information.  As Alphabet explained in its objections, "it is a parent holding company of Google and has no business operations of its own."  Exs. 7, G.  More notably, Alphabet does not make or sell any consumer products.  Nor does it purchase any products from Micron.  Even Netlist appears to concede its lack of relevance, as it does not even once mention "Alphabet" in its revised requests or discuss it separately in its brief.  Br. 3.  Yet Netlist still seeks to compel Alphabet.  In any event, Alphabet can confirm it does not have any information responsive to Netlist's requests.

### II.   NETLIST'S REVISED REQUESTS STILL SEEK OVERLY EXPANSIVE AND SENSITIVE INFORMATION NOT TIED TO ANY RELEVANCE IN THE MICRON CASE

#### A.   Revised Requests Seeking Google's Purchases of Micron Products (Nos. 1-3)

Netlist's revised request Nos. 1-3 seek the part numbers and quantities of Micron DDR4 LRDIMMs (1), Micron DDR5 DIMMs (2), and Micron HBM (3) products that have been used or imported into the United States by Google according to various timelines ranging from January 2020 to May 2021.  Br. 3.  Google will produce information responsive to revised request No. 2.[6] Specifically, Google will produce the manufacturer part numbers, Google part numbers, and quantities of Micron DDR5 DIMMs that Google purchased from Micron since May 1, 2021. Google does not have any responsive information to Netlist's revised request Nos. 1 and 3 to

---

[6]  Google will produce these and the other documents it has committed to produce in this Opposition by September 8.

produce following a reasonable search.

While Google believes it is producing the documents Netlist asks for in these revised requests, any request by Netlist for further documents should be rejected. Netlist relies on *M2M Sols. LLC v. Motorola Sols., Inc.*, No. CV 12-33-RGA, 2016 WL 70814, at *21 (D. Del. Jan. 6, 2016) and *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 3888455, at *1 (D. Colo. Jan. 30, 2017) as purportedly standing for the proposition that "[d]istrict courts have found that third-party discovery is appropriate (and encouraged) under circumstances like this where a dispute exists as to whether certain products ultimately ended up being used or imported into the United States by the defendants' customers." Br. 9. Not so. *M2M* is not even a case about third party discovery at all. Instead, it is an order granting summary judgment of no infringement for products "made and shipped outside of the U.S." that merely notes the plaintiff could have taken discovery about that. *M2M*, 2016 WL 70814, at *22. *Crocs* has nothing to do with the importation or use of goods sold outside the United States at all.

Regarding burden, Netlist ignores that it filed this Motion before Google was able to meet and confer as to the revised requests that now include temporal limitations, which the June 9 subpoenas did not. Exs. 3, 4 at 5-6. The requests at issue in Netlist's cited cases as to burden (Br. 10) do not come close to the overbroad and vague requests that were issued to Google in the June 9 subpoenas, such as Netlist's requests for all of: "part numbers"; "quantities of each product made, used, sold, or offered for sale"; "the number of Micron . . . Products used or incorporated in each of [Google's] identified products"; and "the ***percentage*** of such products made, used, sold, or offered for sale in the United States or imported into the United States." *Id*. And Netlist ignores that it could and should have gotten information from Micron regarding the "part numbers and quantities" of Micron products Google purchased.

**B.**  **Revised Request No. 4 Seeking Documents Regarding the Location of Google's Evaluation and Use of Micron Products**

Netlist seeks to compel "Documents sufficient to show the location(s) where Google evaluates or analyzes any Micron Accused Memory Products to determine whether to purchase quantities of the design."  Br. 3.  Google has investigated and will produce documents, located after a reasonable search, regarding locations of laboratory machines utilized for testing of products purchased from Micron.

Any request for further documents should be rejected.  Netlist contends this information is "relevant to determine whether substantial activities of a sales transaction occurred in the United States and therefore is properly within the damages base for Netlist's infringement claims."  Br. 12.  Netlist's alleged support for this assertion is a quote from *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015) that Netlist says shows it is appropriate to consider the entire "sales cycle" of accused products in assessing damages.  Br. 12.  As Google pointed out in its June 30 email, Netlist takes this quote entirely out of context.  Ex. 9 at 5.  In that case, the parties had entered into a joint stipulation that described the "sales cycle" of the accused products.  *Carnegie*, 807 F.3d at 1309.  The Court simply said, in that context, that it is appropriate to consider the entire "sales cycle" of the accused products.  *Id*.  Netlist's suggestion that this language shows the relevance of some sort of broad "sales cycle" generally in patent cases that goes even beyond the sales themselves is not correct.  Ex. 9 at 5.  In fact, as Google noted in its June 30 email, the Federal Circuit's analysis is entirely consistent with Google's objection that the discovery Netlist seeks from Google is irrelevant.  In analyzing whether an infringing sale had occurred within the United States under § 271(a), the Federal Circuit focused on evidence related to the location of the "commitments" of the actual sales themselves.  *Id*. (citing *Carnegie*, 807 F.3d at 1309-10 (explaining that "there was some evidence suggesting that specific contractual commitments for

specific volumes of chips were made in the United States")).  But information and documents regarding any such "contractual commitments" can and should be obtained from Micron, not Google.  Netlist makes its argument to the Court without even acknowledging, much less rebutting, Google's response.

Netlist's soundbite from *In re Gen. Mfg. Indus., LLC*, 2023 WL 2213199, at *4 (D. Del. Feb. 24, 2023), which Netlist had never cited in prior correspondence with Google, where the court said the respondent had to provide "an estimate of the amount of documents that may be responsive to the subpoena" to justify a refusal to produce any documents in that particular case, does not establish any sort of general rule in this regard.  Br. 12.  And here, it is not just the "volume" of documents that is the problem, but the investigation needed to determine whether there are any documents that "show" the "location(s) where Google evaluates or analyzes" the products at issue, especially given the tangential relevance here given what Netlist could and should have sought from Micron in the first place.

### C.   Revised Request Nos. 5-7 Seek Internal Google Documents Regarding How Google's Unaccused Products Work

Netlist contends its revised request nos. 5, 6, and 7 "ask Google to produce documents related to the interactions between Google's servers and Micron's DDR5 DIMMs, particularly with respect to certain power management features" that Netlist contends are relevant to Netlist's '918 and '054 patents.  Br. 13.  And it similarly says that revised request no. 8 asks for such documents concerning the "training sequences" performed on the Micron's accused devices.  Br. 13-14.  Here, Google will produce internal documents responsive to these requests located after a reasonable search, including as to the power and voltage supplied to the DDR5 DIMMs, such as design documents, technical specifications, circuit schematics, and/or qualification reports. However, the power sequencing at issue is performed either on the DIMM itself or in the CPU,

which are manufactured by third parties.  To the extent Netlist seeks more information regarding those functionalities, Netlist should seek such information directly from those third parties.

Nothing more should be ordered.  Netlist contends the documents it seeks, including "**internal** Google presentations, testing, evaluation, simulation, qualification or comparability studies," are relevant to "infringement and technical benefits analyses."  Br. 13 (emphasis added). Initially, as Google repeatedly noted to Netlist, Google's uncommunicated internal analyses and decision-making regarding any cost/benefit analysis would not be relevant to Netlist's infringement case against Micron.  Netlist ignores this in its brief and provides no authority for its sweeping request into Google's internal analyses.

To the extent that Netlist is interested in these materials for "infringement" purposes, that makes no sense either.  Google's products are not accused.  Rather, it is Micron's memory devices that are accused.  And as Netlist conceded on the parties' July 6 meet and confer, the limitations of the patents at issue are to be satisfied by what goes on in the accused device itself.  Ex. 10 at 2. For example, Netlist noted that the claims require the memory module to be "configured" to receive a pre-regulated input voltage.  *Id*.  That being the case, information regarding the device itself, that Netlist can and should get from Micron, should be sufficient.  Netlist should not need any discovery regarding Google's use of the accused memory devices in order to prove how the accused device is "configured."

Further, even if there may be some minimal relevance to how the accused memory products work in other unaccused devices, that too would be something that Netlist could and should get from Micron.  Netlist says it "has not been able to receive documents showing the requested information directly from Micron because Micron does not have in its possession testing results or detailed datasheets showing the power management function or programming of **Google's**

servers." Br. 14.  But Netlist does not say why it needs this information specifically in relation to "Google's" servers.  Certainly, Micron designs these products, covered by industry standards, with their use in mind.  To the extent Netlist genuinely needs information regarding how these products are used in practice by any of Micron's many customers, Netlist can get that information from Micron.  Netlist does not contend otherwise.

## III.  NETLIST'S REQUEST FOR TRANSFER SHOULD BE DENIED

Even though Netlist served identical subpoenas to what it now seeks to compel for compliance in Plano, Texas in E.D. Tex., it oddly asks for transfer to E.D. Tex. in the alternative after moving to compel in Delaware.  Perhaps Netlist did not move to compel in E.D. Tex. because it did not believe that its subpoenas to Google and Alphabet could have been enforced there.  For example, Netlist has no basis to say that Alphabet "regularly transact[] any business in person" or "resides" in Texas.  Fed. R. Civ. P. 45(c).  This just further shows the lack of regard for the burden on Google and Alphabet as third parties in serving unnecessary, redundant subpoenas in multiple jurisdictions and the vexatious nature of Netlist's litigation tactics.

In any event, under Rule 45(f), the Court "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P 45(f).  "The basic objective" of Rule 45(f) is "to ensure that transfer is a *rare event*."  Report of the Civil Rules Advisory Committee to the Standing Committee on Rules of Practice and Procedure May 2, 2011.[7]  Further, "the proponent of transfer bears the burden of showing that such circumstances are present."  Fed. R. Civ. P. 45(f), advisory committee notes (2013 amendments).  As the Advisory Committee further explains:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it ***should not be assumed*** that the issuing court is in a superior

---

[7]  *Available at* https://www.uscourts.gov/sites/default/files/fr_import/CV05-2011.pdf (last retrieved Aug. 27, 2023).

> position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate ***only if*** such interests ***outweigh*** the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*Id*. Netlist does not come close to meeting its burden of showing the "exceptional circumstances." Netlist asserts that "the E.D. Tex. Court is better positioned to decide the disputes between Netlist and Google." Br. 16. Netlist points to various recent events in E.D. Tex. that supposedly establish that court's "familiarity" with the asserted patents, accused products, and relevant technology, such as a recent trial against Samsung and a *Markman* hearing in the *Micron-203* action. But the Advisory Committee's guidance *explains* that the transfer analysis focuses on whether the transferee court "has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Since the Samsung trial did not involve Google, Alphabet, or the accused products at issue in these subpoenas, it is not relevant to any issues presented in this Motion. The *Markman* hearing only related to claim construction, which is likewise irrelevant to any of the discovery issues present here. Indeed, this Court too has extensive experience in patent cases—and specifically with regards to these ***same*** parties and ***similar*** accused products—and in the issues presented by the motion. *See supra* n.1.

Netlist further argues that having "discovery disputes against Micron's customers resolved in the same court" could be judicially efficient, but all of Netlist's legal authorities are distinguishable from the facts here. For example, in *N. Atl. Operating Co., Inc. v. Dunhuang Grp*., 2018 WL 3381300 (D. Del. July 11, 2018), the court explained that the two reasons why the transferee court was better suited to decide the motion to compel were: (1) the court had already ruled on a motion to serve the same subpoena; and (2) the court was already familiar with the issues in the motion to compel based on a prior case involving the same petitioner, respondent,

and similar discovery requests.  *Id*. at \*2.  Neither rationale applies here.  *In re Daimler Truck N. Am., LLC*, 2023 WL 2456069 (D. Del. Mar. 10, 2023) is likewise irrelevant, as that case related to a respondent of a subpoena who had ***consented*** to transfer.  *Id*. at \*2.  Google and Alphabet have not so consented.  And in *Meijer Inc. v. Ranbaxy Inc.*, 2017 WL 2591937 (E.D. Pa. June 15, 2017), the Court decided to transfer the matter in part because another non-party—who had likewise received a subpoena and objected to its scope—had already consented to transfer the matter.  *Id*. at \*3.  But here, Netlist has not identified any other non-party who has consented to transfer.  In fact, Netlist has long refused to tell Google and Alphabet what other subpoenas it has even served in the Micron case.  Ex. 10 at 1-2.

Netlist next contends that transfer would "avoid any potential interruption to the trial schedule."  Br. 17.  But Netlist has been on notice of the September 5 fact discovery deadline[8] since October 21, 2022 when the E.D. Tex. court entered the first Scheduling Order.  *Micron-203*, D.I. 40.  Yet Netlist waited until May and June 2023 to serve the subpoenas it now seeks to enforce, and repeatedly waited weeks to substantively communicate with Google and/or revised its requests shortly before it moved to compel.  Netlist does not even attempt to explain this delay.  In its only legal authority in support of its argument, *N. Atl. Operating*, the Court granted the motion to transfer after the Respondents never filed any response.  *N. Atl. Operating*, 2018 WL 3381300, at \*1.  Further, Netlist has presented no reason why, having already chosen to move to compel in Delaware as opposed to E.D. Tex. where it served identical subpoenas for compliance as well, that transfer would result in any quicker resolution.

Netlist's final argument relates to the burden that would be placed on Google and Alphabet

---

[8]   One day after Netlist filed this motion to compel, it submitted a joint motion in *Micron-203* to extend the fact discovery deadline and opening expert disclosure deadline by fifteen days to September 20.  *Micron-203*, D.I. 139 at 3 (E.D. Tex. Aug. 11, 2023).

if the matter were transferred.  Br. 17-18.  As an initial matter, Netlist does not explain why purported job listings in Dallas, TX—which is located in ***N.D.*** Tex.[9]—would have any relevance to an analysis as to whether this motion should be transferred to ***E.D.*** Tex.  Further, it cites to *In re Subpoena to Amazon.com, Inc.*, 2019 WL 13192100, at *2 (W.D. Wash. Nov. 19, 2019) for the apparent notion that "it is highly unlikely that the presiding judge would hear oral argument."  Br. 18.  Not only does this notion wrongly assume that Google would not desire to be heard on these issues, but this also does not appear to accurately reflect the current events of the *Micron-203* matter, which just recently held an oral argument to resolve discovery disputes.  *Micron-203*, D.I. 153.  Given that Google's undersigned counsel includes attorneys from Delaware, but none in Texas, transfer to E.D. Tex. would require an additional travel burden for any in-person hearing. And even if it were true that transfer would not result in any additional burden as to producing documents or a witness for deposition, Netlist still has not met its burden to show that the interests in having the motion resolved in E.D. Tex. "***outweigh*** the interests of the nonparty served with the subpoena in ***obtaining local resolution of the motion***."  Fed. R. Civ. P. 45(f), advisory committee notes (2013 amendments).

Finally, while Netlist cites two instances where courts in this district granted transfer,[10] courts also routinely deny motions to transfer because the movant had failed to meet the burden to show that "exceptional circumstances" were present.  *In re Gen. Mfg.*, 2023 WL 2213199, at *2; *In re I.M. Wilson, Inc.*, 21-MC-122-RGA, 2022 WL 1239905, at *2 (D. Del. Apr. 27, 2022); *In re Mathews*, 18-MC-153-LPS, 2018 WL 5024167, at *1 (D. Del. Oct. 17, 2018).

---

[9]   *See* https://www.txnd.uscourts.gov/court-info (listing Dallas as part of the N.D. Tex.).

[10]   As previously discussed (*supra* at pp. 17-18), both such instances cited by Netlist are not applicable to the circumstances here.  One involved ***consent*** to transfer by the respondent (*In re Daimler*), and the other was easily distinguished on its facts and the respondent did not even submit an opposition (*N. Atl. Operating*).

## IV.   THE COURT SHOULD AWARD ATTORNEYS' FEES

As set forth above, Rule 45 mandates that Netlist was required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Indeed, Rule 45 provides "special" protections for non-parties that receive subpoenas. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing [discovery] needs."). Further, Rule 45 requires a party to obtain documents, when reasonably available, from an adverse party rather than a non-party. *See, e.g.*, *Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 WL 1358662, at *10 (D. Mass. April 18, 2012) (holding that "the discovery at issue must be limited because it is cumulative and because it can be obtained from another source that is more convenient—namely, the defendants themselves"). As detailed throughout this brief, Netlist did not take such "reasonable steps," but consistently pushed for a far broader set of discovery than it ultimately moved on and then refused to even meet and confer about the revised set of requests before rushing to court with this Motion. For this conduct, as Rule 45 provides, this Court should "impose an appropriate sanction," including "reasonable attorney's fees" for opposing this Motion and responding to Netlist's subpoenas in *Micron-203*. Fed. R. Civ. P. 45(d)(1).

The Third Circuit has explained that in analyzing whether a subpoena presents an "undue burden" in the related context of a motion to quash a subpoena under Rule 45(d), the factors to be considered include "the relevance of the information requested," "the need of the party for the documents," "the breadth of the document request," "the time period covered by the request," "the particularity with which the party describes the requested documents," and "the burden imposed." *Rardon*, 2023 WL 5347298, at *2 n.6.

Here, as discussed extensively *supra*, all of these factors cut against Netlist. Indeed, much

19

of the information requested was not "relevant" to Netlist's infringement case against Micron at all, as it related to Google's unaccused products and systems.  Nor did Netlist ever "need" much of the information it requested, as evidenced by the fact that many of its requests as originally drafted were absent from the revised requests set forth in this Motion.  The requests were not drafted with "particularity," as their "breadth" was wide-ranging across an array of issues until they were admittedly "narrowed."  Br. 6.  The time periods covered by the original requests were largely unbounded, and Netlist added time constraints only to a few of the revised requests just a week before its motion.  The burden imposed was thus "undue" in violation of Rule 45.  The service of "duplicative" subpoenas—even after multiple requests to withdraw them—also warrants fees.  *Estate of Zahau v. Shacknai*, No. 13-CV-01624 W (NLS), 2016 U.S. Dist. LEXIS 119491 (S.D. Cal. Feb. 23, 2016) (awarding attorneys' fees after nonparty had been served with "duplicative" federal and state subpoenas); *see also Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 472 (D.S.D. 2011) (awarding attorneys' fees after a nonparty had been served with multiple sets of subpoenas).

Attorneys' fees are appropriate for Netlist's conduct here.

OF COUNSEL:

David A. Perlson
Jonathan Tse
Michael Trombetta
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Deepa Acharya
Jared Newton
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, NW
Washington, DC 20005
(202) 538-8000

Dated:  September 1, 2023

*/s/ Kelly E. Farnan*                          
Kelly E. Farnan (No. 4395)
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Respondents Google LLC and Alphabet Inc.*